# Exhibit 8

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE: APPLICATION OF | : | Xiangyang LI, et al. |
| TITLE | : | METHOD, A TELECOMMUNICATION SYSTEM AND A NETWORK NODE FOR SPONSORING A COMMUNICATION SERVICE |
| APPLICATION NO. | : | 13/381,412 |
| FILED | : | December 29, 2011 |
| CONFIRMATION NO. | : | 4160 |
| EXAMINER | : | Quoc Duc Tran |
| ART UNIT | : | 2656 |
| LAST OFFICE ACTION (Supplemental) | : | April 16, 2013 |
| ATTORNEY DOCKET NO. | : | LUTZ 201358US01 ALU No. 805653 |

## **AMENDMENT A**

MAIL STOP AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

Responsive to the Office Action mailed March 7, 2013 and the Supplemental Office Action mailed April 16, 2013, regarding the above-referenced patent application, the Applicants respectfully request amendment and reconsideration of the application.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 7 of this paper.

WSOU_460_8625758-0000817

**AMENDMENTS TO THE CLAIMS:**

The listing of claims will replace all prior versions, and listings of claims in the application:

**LISTING OF THE CLAIMS**

1. (Currently Amended)   A method for sponsoring a communication service, <u>the method comprising:</u>

<u>receiving a request for communication services;</u>

<u>accessing, dynamically, a multi-dimensional rule for charging a sponsor of said communication services at least a portion of total charges for the requested communication services based at least on at least one respective value of at least one respective parameter other than an identity of an originator of the request for communication services, an intended recipient of a communication of the requested communication services and an identity of the sponsor;</u>

<u>providing</u> ~~wherein~~ said communication service ~~is made available directly~~, ~~in particular~~ to a user of said communication service<u>, directly</u>, ~~and wherein a rule, in particular applicable for charging a sponsor of said communication service, is determined dynamically~~<u>; and</u>

<u>generating a charging record for charging the sponsor according to the multi-dimensional rule</u>.

2. (Currently Amended)   ~~A~~ <u>The</u> method ~~according to~~<u>of</u> claim 1, wherein a first cost for the usage of said communication service is charged at least partially to said sponsor, ~~in particular~~ by determining a second cost, ~~in particular~~<u>the second cost</u> depending on said rule and said first cost.

3. (Currently Amended)   ~~A~~ <u>The</u> method ~~according to~~<u>of</u> claim 1, wherein said rule depends on ~~an~~ <u>the</u> originator <u>of the request</u> or ~~a~~ <u>the intended</u> recipient of said communication ~~service~~.

2

WSOU_460_8625758-0000818

4. (Currently Amended)   ~~A~~ The method ~~according to~~of claim 1, wherein an advertisement is added to said communication service.

5. (Currently Amended)   ~~A~~ The method ~~according to~~of claim 4, wherein said rule is determined depending on information about said advertisement.

6. (Currently Amended)   ~~A~~ The method ~~according to~~of claim 1, wherein said sponsor is reimbursed at least partially, ~~in particular~~ by a user of said communication service, ~~in particular~~ by determining a third cost.

7. (Currently Amended)   ~~A~~ The method according to claim 1, wherein said rule depends on information about the location of a user of said communication service.

8. (Currently Amended)   A system for sponsoring a communication service, comprising:

~~A~~ a ~~communication means~~telecommunications network for making said communication service available directly, ~~in particular~~ to a user of said communication service, and

~~A~~ a ~~first processing means~~balance management server for dynamically determining a multi-dimensional rule, ~~in particular applicable~~ for charging a sponsor of said communication service at least a portion of total charges for the requested communication services based at least on at least one respective value of at least one respective parameter other than an identity of an originator of the request for communication services, an intended recipient of a communication of the requested communication services and an identity of the sponsor.

9. (Currently Amended)   ~~A~~ The system ~~according to~~of claim 8, further comprising:

a ~~second processing means~~charging server for charging a first cost for the usage of said communication service at least partially to said sponsor, ~~in particular~~ by

3

determining a second cost, ~~in particular~~ the second cost depending on said rule and said first cost.

10. – 16. (Canceled)

17. (Currently Amended) A device for sponsoring a communication service, comprising:

_____ a balance management server ~~first processing means~~ for dynamically determining a multi-dimensional rule~~, in particular applicable~~ for charging a sponsor of said communication service at least a portion of total charges for the requested communication services based at least on at least one respective value of at least one respective parameter other than an identity of an originator of a request for communication services, an intended recipient of a communication of the requested communication services and an identity of the sponsor.

18. (Currently Amended) ~~A~~ The device ~~according to~~of claim 17, further comprising a charging server~~second processing means~~ for charging a first cost for the usage of said communication service at least partially to said sponsor, ~~in particular~~ by determining a second cost, ~~in particular~~ the second cost depending on said rule and said first cost.

19. (Currently Amended) ~~A~~ The device ~~according to~~of claim 17, wherein said balance management server ~~first processing means~~ is ~~adapted~~ configured to determine an originator of the request or ~~a~~ an intended recipient of said communication ~~service~~, and wherein said balance management server ~~first processing means~~ is ~~adapted~~ configured to determine said rule depending on said originator of the request or said intended recipient of said communication ~~service~~.

20. (Currently Amended) ~~A~~ The device ~~according to~~of claim 17 further comprising a ~~first storage means~~sponsorship database for storing said rule.

4

21. (Currently Amended) A  The device according toof claim 17, further comprising third processing meansan advertisement server for adding an advertisement to said communication service.

22. (Currently Amended) A The device according toof claim 21, wherein said balance management server first processing means is adapted configured to determine said rule depending on information about said advertisement.

23. (Currently Amended) A  The device according toof claim 17, further comprising a fourth processing meansprocessor for reimbursing said sponsor, in particular by a user of said communication service, in particular by determining a third cost (C1).

24. (Canceled)

25. (Currently Amended) A  The device according to claim 17, wherein said balance management serverfirst processing means is adapted configured to determine information about a location of a user of said communication service, and wherein said balance management server first processing means is adapted configured to determine said rule depending on said location of said user.

26. (Currently Amended) A   non-transient   computer   readable   medium comprising:
    instructions for a computer program for sponsoring a communication service, wherein said computer program,which when executed on by a computer, causes the computer to:
-        make a communication service available directly, in particular to a user of said communication service, and wherein said computer readable program, when executed on a computer causes the computer
        to dynamically determine a multi-dimensional rule, in particular applicable for charging a sponsor of said communication service at least a portion of total charges

5

for the communication service based at least on at least one respective value of at least one respective parameter other than an identity of an originator of a request for the communication service, an intended recipient of a communication of the requested communication service and an identity of the sponsor, ~~dynamically~~.

27. (Currently Amended) A computer program product for sponsoring a communication service, comprising:

_____ -a non-transient computer ~~usable~~ readable medium having ~~a computer readable program~~instructions, ~~wherein said computer readable program~~ which, when executed ~~on~~ by a computer, causes the computer to make a communication service available directly, ~~in particular~~ to a user of said communication service, and ~~wherein said computer readable program, when executed on a computer causes the computer~~ to dynamically determine a multi-dimensional rule, ~~in particular applicable~~ for charging a sponsor of said communication service at least a portion of total charges for the communication service based at least on at least one respective value of at least one respective parameter other than an identity of an originator of a request for the communication service, an intended recipient of a communication of the requested communication service and an identity of the sponsor, ~~dynamically~~.

28. (New) The method of claim 1 wherein the at least one respective parameter comprises at least one of  a user location, a type of service, a direction of service, time information, a payment type and rule priority information.

6

## REMARKS

The Applicants have now had an opportunity to carefully consider the comments set forth in the Office Action that was mailed March 7, 2013 and the Supplemental Office Action mailed April 16, 2013. All of the rejections and objections are respectfully traversed. Amendment and reconsideration of the Application are respectfully requested.

## The Office Action

In the Supplemental Office Action that was mailed April 16, 2013:

claims **1** and **26** were objected to for alleged reasons of form;

claims **1** and **26 – 27** were rejected under 35 USC §101 for allegedly being directed toward non-statutory subject matter;

the specification was objected to in regards to **claims 26** and **27**;

**claims 1, 3, 7, 8, 17, 19 – 20** and **25 – 27** were rejected under 35 USC §102(b) as allegedly being anticipated by U.S. Patent Application Publication Number 2003/0076940 by Manto ("Manto");

**claims 2, 9, 18** and **24** were rejected under 35 USC §103(a) as allegedly being obvious in view of Manto and U.S. Patent Number 7,424,102 to Koskinen et al. ("Koskinen");

**claims 4 – 5** and **21 – 22** were rejected under 35 USC §103(a) as allegedly being obvious in view of Manto and U.S. Patent Application Publication Number 2001/0048737 by Goldberg et al. ("Goldberg"); and

**claims 6** and **23** were rejected under 35 USC §103(a) as allegedly being obvious in view of Manto and U.S. Patent Application Publication Number 2006/0034438 by O'Neill ("O'Neill").

## The Present Application

By way of brief review, the present application is directed toward a flexible, dynamic method that facilitates a sponsor totally, or partially, sponsoring communication services of a communications service user. The disclosed methods and systems provide a mechanism for a portion of communication service charges, to be paid for by

7

WSOU_460_8625758-0000823

a sponsor, <u>to be determined through the use of a multi-dimensional rule</u> **and** <u>without delaying the provision of the communication service</u>.  That is, the methods and systems of the present application provide communication services to the user directly, without delay such as would be caused by requiring a menu selection or other information collection procedures.  The multi-dimensional rule allows a proportion or amount to be paid by a sponsor to be determined according to plural characteristics of the communication service or associated with the communication service that is desired.

For example, during time of natural disaster at a particular location, a government may elect to pay for all communication services for <u>particular individuals</u> if they are in <u>a particular location</u>.  In an alternative, in order to alleviate bandwidth demands during a time of crisis, the government may elect to pay for or subsidize only low bandwidth communication services such as, for example, <u>SMS messages</u> for everyone in <u>the area</u> of the crisis or, for example, only <u>particular individuals</u> that meet income criteria or are associated with a particular government program.  In this regard, the methods and systems are able to provide this flexibility <u>by determining</u> or accessing <u>a multi-dimensional rule</u>, for charging the sponsor of the communication service that is based at least on at least one respective value of at least one respective parameter <u>other than</u> an identity of an originator of a request for the communication service, an intended recipient of a communication of the requested communication service and an identity of the sponsor.

As indicated above, such parameters might include the <u>location</u> of the calling or called party, <u>the time of day</u>, the <u>day of the week</u>, whether or not a user has agreed to receive an advertisement, the identity of an advertisement, the <u>type of service</u>, the <u>direction</u> of the call or communication (i.e., whether the call, message or information is incoming or outgoing), whether or not the communication is a "roaming" communication (e.g., see paragraphs 42 – 50 of the published version of the application: U.S. 2012/0106722 A1), etc.

**The Cited Documents**

In contrast, it is respectfully submitted that the cited documents, to the extent they mention communication sponsorship; describe less flexible arrangements and/or

8

arrangements that do not provide communication services <u>directly</u>.

For example, **Manto** allegedly describes systems and methods for providing sponsored or universal telecommunication service and a third-party payer service. It is respectfully submitted that Manto allegedly discusses a method of operating a telecommunications device wherein the telecommunications device is used to detect an outgoing call from a calling party to a called number. **The calling number** is used to **determine whether or not** the calling party is a universal service user (Abstract). <u>If it is determined that the called number is among the class of numbers exempt from charges, the call is connected.</u> A determination on the sufficiency of funds in a prepaid account is made. If it is determined that there are insufficient funds in a prepaid account to cover charges associated with the outgoing call, **a message is generated and sent to the calling party** or a 3rd party **requesting authorization** to charge an additional fee for connecting the call with the called party and providing related information or application services. **User input is received from a calling party**, indicating the calling party's authorization of such charge. The connection between the calling and called party is made (Abstract). It is respectfully submitted that this is **not fairly construed** as providing communication service <u>directly</u>, as that word is used in the present application (e.g., see paragraphs 3 and 7 of the published version of the present application).

The Office Action cites paragraphs 44, 29 and 67 of Manto against **claims 1, 8, 17** and **26**. However, it is respectfully submitted that the cited paragraphs do not disclose or suggest "making said communication services available **directly**."

Paragraph 7 of the present application indicates that an advantage of the method of the present application is that communication services made available to the user **directly,** e.g. <u>without any delay or disruption e.g. by advertisement or a prompt</u> to said user.

In contrast, cited paragraph 29 of Manto discusses smart card, phonecard and virtual phonecard based operations. It is respectfully submitted that the use of such cards requires a disruption and/or delay for the entry of card information.

Cited paragraph 67 is part of a discussion of Figure 6. Taken alone, paragraph 67 indicates that if the calling party is on a sponsored list, then the call is

9

completed. Accordingly, the Office appears to have felt justified in asserting that paragraph 67 discloses making communication services available <u>directly</u>. **However**, the discussion of Figure 6 begins at paragraph 64 and paragraph 65 clearly indicates (as does Figure 6 itself) that incoming calls are received and **the incoming caller is asked to pay**. Accordingly, it is respectfully submitted that the cited portion do not disclose making said communication services available **<u>directly</u>**.

Cited paragraph 44 addresses aspects of Figure 1 (i.e. Figure 1a and Figure 1b). Figure 1a includes a number of processing paths beginning with an incoming call. Most of the paths include "generate message" and the generation of a message indicating: "to complete this call please accept an additional charge of _/minute by pressing # or saying yes. Accordingly, it is respectfully submitted that the cited portion do not disclose making said communication services available **<u>directly</u>** (e.g. <u>without any delay or disruption, e.g.</u> by advertisement <u>or a prompt</u> ).

Additionally, it is respectfully submitted that Manto **does not disclose** the determination of a rule for charging of the type recited in, for example, **claim 1** of the present application. For example, in regard to the rule, the Office Action characterizes paragraphs 29 and 67 as indicating that a sponsor approves communication costs for particular users. Even if this characterization is correct, it does not disclose a rule that determines <u>a cost</u> of a sponsor based on a parameter value **other than** an identity of an originator of a request for the communication service, an intended recipient of a communication of the requested communication service and an identity of the sponsor, as is now recited in, for example, **claim 1**.

**Koskinen** is directed toward charging for an IP-based communication system. Column 3, line 59 – column 4, line 49 of Koskinen is cited for its discussion of sponsorship charging information and for a table including examples of a sharing code. For example, code 00 refers to normal charging - charges are not shared. It is used when an originating subscriber is charged for the full cost and the user of terminating part does not bear any of the charges; and code 06, which indicates that the user of the terminating part bears a portion of the total charge. Code 01 indicates that the user of the terminating part or the service provider will bear all of the network access charge.

10

It is respectfully submitted that even if the table of Koskinen is considered to be a rule for charging, it is respectfully submitted that the cited portions of Koskinen do not disclose a rule for charging a sponsor based on a parameter value **other than** an identity of an originator of a request for the communication service, an intended recipient of a communication of the requested communication service and an identity of the sponsor, as is now recited in, for example, claim 1.

**Goldberg** is directed toward a method and apparatus for providing advertisement supported communications. Paragraph 37, 20, 21, 25 and 44 – 45 are cited against claims of the present application. Cited paragraphs 25, 44 – 45 discuss scenarios wherein callers receive discounted or free calls in exchange for listening to advertisements. Paragraphs 20 and 21 describe a database that includes information indicating that a particular caller has signed up for the advertisement based discount. Cited paragraph 45 refers to Figure 6, which provides a flowchart wherein the calling party is identified, dialed digits are received, a determination is made as to whether the caller participates in the advertisement service and if so is connected to the dialed telephone. Subsequently an advertisement is selected and played to the caller and the billing record is generated. Cited paragraph 25 indicates that advertisers may provide different rate premiums for listening to their messages and that rate premiums cause callers to receive discounted or free calls.

**However**, it is respectfully submitted that Goldberg does not disclose or suggest a particular mechanism for performing these functions. **Moreover**, it is respectfully submitted that Goldberg **does not disclose or suggest** accessing or determining a multi-dimensional rule of the type recited, for example, in **claim 1** of the present application. Instead, it is respectfully submitted that Goldberg appears to suggest a two stage process wherein, **first** it is determined whether or not a caller participates in the advertisement program. If the caller participates in the advertisement program, an advertisement is selected and played. Cited paragraph 25 might be said to imply that the selected advertisement identifies a rate premium. It is respectfully submitted that and rule that the Office might believe is associated with this this identification of a rate premium is one dimensional. That is, the rate premium is dependent **solely** on the selected advertisement.

11

**In contrast** the <u>multi-dimensional rule</u> of the <u>present application</u> allows, for example, one user to receive a first level of sponsorship for receiving an advertisement and a second user to receive a second level of sponsorship for receiving the same advertisement. Moreover, the level of sponsorship received by either or both users can be further adjusted based on the location of the users, the time of day, the day of the week or any other parameter or set of parameters.

**O'Neill** is concerned with a system wherein resources are allocated to respective users, but where a particular user may not need a portion of the resources allocated to that user during a particular period and wherein a second user might need resources in addition to those allocated to that second user. Under those circumstances, the system of O'Neil temporarily re-allocates the resources and credits the first user and charges the second user (e.g., claim 1 of O'Neill). For example, paragraph 9 of O'Neill indicates that a first subscriber of guaranteed resources in a communications network can allow the reallocation of the guaranteed resource to another user. Under those conditions, the user who originally paid for the resource guarantee is fully or partially compensated for a resource which what might otherwise go unused. Cited paragraph 71 discusses donated and borrowed resources. The last 12 lines of cited paragraph 71 indicate that borrowing costs assign cost components to a borrowing process and refer to a charge to the borrower and a credit to "the donor".

It is respectfully submitted that this general discussion of reimbursement related to the reallocation of leased resources **does not disclose or suggest** reimbursement of <u>a sponsor</u> <u>that sponsors communication services</u> to <u>a user</u>.

**<u>The Claims are Formal</u>**

**Claims 1** and **26** were objected to for allegedly not conforming to "current claim drafting practice." The Office Action alleges that the claims must be in 2-part form having a preamble, transition and body. While this assertion is respectfully traversed and while it is noted that 37 CFR §1.75(e) indicates a similar format "<u>should</u>" be followed <u>if the case admits</u>, and it is respectfully submitted that the suggested format is therefore **not** a requirement, it is noted that **claims 1** and **26** <u>have been amended</u> and now conform to the suggested format.

12

Accordingly, withdrawal of the objections to **claims 1** and **26** is respectfully requested.

**<u>The Claims Recite Statutory Subject Matter</u>**

**Claims 1** and **26 – 27** were rejected under 35 USC §101 for allegedly being directed toward non-statutory subject matter.

However, in an effort to explain the reason for this rejection in regard to **claim 1**, the Office Action appears to make reference to the <u>outdated</u> and <u>overturned</u> Federal Circuit Court decision, *In re Bilski* and a related reliance on a so called "machine or transformation" test.  In this regard, it is respectfully submitted that the Supreme Court of the United States has since ruled that the machine or transformation test promulgated by the Federal Circuit in Bilski is **<u>not</u>** the sole test for patent eligibility under 35 USC §101.  It is respectfully submitted that **the Supreme Court indicated that** <u>what is at issue is whether or not the claim recites merely an abstract idea</u>.  It is respectfully submitted that **claim 1** of the present application did not, and **as amended** <u>does not,</u> <u>merely recite an abstract idea</u>.  Accordingly, **claim 1** recites statutory subject matter.

In this regard, the attention of the Office is directed toward the July 27, 2010 Memorandum to the Patent Examining Corps from Robert W. Bahr, the Acting Associate Commissioner for Patent Examination Policy regarding Interim Guidance for Determining Subject Matter Eligibility for Process Claims in view of Bilski v. Kappos.
It is respectfully submitted that **claim 1** clearly describes a particular solution to a particular problem to be solved, implements a concept in some tangible way and/or performs procedures that are observable and verifiable.  For example, that the communication services are made available can be observed when the user is successful in making or receiving a call or sending or receiving a message.  Additionally, charges made to the sponsor can also be observed.  Accordingly, it is respectfully submitted that contrary to the assertion of the Office Action, **claim 1** did not and after the present amendment **does not** recite "<u>merely an abstract idea</u>" and is patent eligible under 35 USC §101.

For at least the forgoing reasons, **claim 1** recites statutory subject matter and withdrawal of the rejection of **claim 1** under 35 USC §101 is respectfully requested.

WSOU_460_8625758-0000829

**Claims 26** and **27** were apparently rejected for allegedly reciting subject matter that could reasonably interpreted as being directed toward a <u>signal</u> or <u>software</u> program.

However, **claims 26** and **27** have been amended and <u>recite non-transient computer readable medium</u>. Accordingly, it is respectfully submitted claims 26 and 27 are directed to a machine or manufacture and not a transient signal or "software per se".

For at least the forgoing reasons, **claims 26** and **27** recite statutory subject matter and withdrawal of the rejection of **claims 26** and **27** under 35 USC §101 is respectfully requested.

It is respectfully submitted that one of ordinary skill in the art would have understood and would understand that instructions for processors, processing means, computers or servers (e.g. Fig. 2 and Fig. 5)  to perform aspects of the methods, depicted, for example in Figs. 3 and 6, would be or could be provided on non-transient computer readable media.  Furthermore, the version of **claim 26** and **27** that the Office Action characterizes as being reasonably interpreted as "software *per se*" were substantially the same as the original claims and were therefore self-supporting.  To the extent that the characterization of the Office Action was correct, one of ordinary skill in the art would have understood that "software *per se*" can be included in, or on, non-transient computer readable media.  Accordingly, it is respectfully submitted that the amendments to **claims 26** and **27** do not represent new matter.

**<u>The Specification</u>**

The specification was objected to for allegedly failing to provide proper antecedent basis for the phrases "computer program product", "computer program" and "computer usable medium" as they are used in claims 26 and 27.

However, it is respectfully submitted that **claims 26** and **27** were substantially the same as original **claims 26** and **27** and original **claims 26** and **27** were part of the specification and were therefore were self-supporting (**MPEP §2163**: "See *In re Koller*, 613 F.2d 819, 204 USPQ 702 (CCPA 1980) (<u>original claims constitute their own description</u>); accord *In re Gardner*, 475 F.2d 1389, 177 USPQ 396 (CCPA 1973); *accord In re Wertheim*, 541 F.2d 257, 191 USPQ 90 (CCPA 1976). It is now well

14

WSOU_460_8625758-0000830

accepted that a satisfactory description may be in the claims or any other portion of the originally filed specification. These early opinions did not address the quality or specificity of particularity that was required in the description, i.e., how much description is enough".).

Additionally, it is respectfully submitted that one of ordinary skill in the art would know what "computer program product", "computer program" and "computer usable medium" mean.

Accordingly, withdrawal of the objection to the specification is respectfully requested.

## The Claims Are Not Anticipated

**Claims 1, 3, 7, 8, 17, 19 – 20** and **25 – 27** were rejected under 35 USC §102(b) as allegedly being anticipated by Manto.

In regard to **claims 1, 8, 17** and **26**, and in an effort to support the assertion that Manto discloses a method and device for sponsoring a communication service, wherein said communication service is made available <u>directly</u>, in particular to a user of said communication service, the Office Action cites paragraph 44 of Manto.

**However**, it is respectfully submitted that cited paragraph 44 **does not disclose** providing a sponsored communication service <u>directly</u>.

Paragraph 7 (i.e., page 2, lines 10 – 20 and in particular lines 5 – 20) of the present application indicates that the method of the present application is "very flexible in terms of amount of sponsorship and sponsored party and on the other hand <u>said communication service is made available to said user</u> **directly**, e.g., **without any delay** or **disruption** e.g. by advertisement **or a prompt** to said user.

<u>In contrast</u>, it is respectfully submitted that cited paragraph 44 does not describe a sponsored service.  Instead, paragraph 44 indicates that **if the prepaid balance includes enough funds** to cover the call, the call is complete <u>unless it must first go through an authorization routine</u>.  It is respectfully submitted that paragraph 45 describes the situation when the balance in the prepaid account is not sufficient.  Under those conditions **before the call is completed**, <u>the calling party will hear a voice on the line</u> (or see a message or receiving indication one way or another) <u>that informs the</u>

15

<u>caller that they are reaching a number which requires an additional payment</u> and asks the calling party if <u>they</u> are willing to pay the additional charge to complete the call for service.   Accordingly, it is respectfully submitted that cited paragraph 44 does not disclose a <u>sponsored</u> communication service that is provided <u>directly</u>.  It is respectfully submitted that paragraph 46 emphasizes the <u>indirect</u> nature of the call completion of the this aspect of Manto by indicating that the "software both <u>interrupts the caller</u>, <u>queries the caller</u>, determines whether to complete the call by <u>seeing if **the caller** is willing</u> and in many cases able to pay for the call, completes the call and then bills the call. Accordingly, it is respectfully submitted that the cited portion of Manto does not disclose or suggest that a call is <u>sponsored</u> or that communications services are made **directly**.

For at least the foregoing reasons, it is respectfully submitted that **claims 1, 7, 8, 17** and **26 – 27**, as well as **claims 2 – 7, 9** and **18 – 25**, which depend from **claims 1, 8** and **17** respectively**,** are not anticipated by Manto.

**Moreover**, with regard to – – wherein a rule, in particular applicable for charging a sponsor of said communication service is determined dynamically--, the Office Action cites paragraphs 29 and 67.   The Office Action characterizes paragraphs 29 and 67 as indicating that a sponsor approves communication costs for particular users.  However, <u>even if</u> this were fairly construed as disclosing <u>a rule</u>, in particular applicable for charging a sponsor of said communication service is determined dynamically (which is disputed because a rule for approving or not approving is **not** a rule <u>for charging</u> for approved calls), **claim 1** has been <u>amended</u> and now recites a <u>multi-dimensional</u> rule for charging a sponsor of said communication services at least a portion of total charges for the requested communication services <u>based at least on at least one respective value of at least one respective parameter</u> **other than** an <u>identity of an originator</u> of the request for communication services, an <u>intended recipient</u> of a communication of the requested communication services and an <u>identity of the sponsor</u>.

It is respectfully submitted that Manto **does not disclose** a multi-dimensional rule that <u>determines a cost of a sponsor</u> based on a parameter value **other than** an identity of an <u>originator</u> of a request for the communication service, an intended <u>recipient</u> of a communication of the requested communication service and an identity of the <u>sponsor</u>, as is now recited in, for example, **claims 1, 8, 17** and **26.**

For at least the foregoing additional reasons, it is respectfully submitted that **claims 1, 8, 17** and **26 – 27,** as well as **claims 2 – 7, 9** and **18 – 25,** which depend from **claims 1, 8** and **17** respectively, are not anticipated by Manto.

With regard to **claims 3** and **19,** the Office Action characterizes paragraph 28, 29 and 67 as disclosing that a rule depends on an originator or recipient of said communication service.   However, **claims 3** and **19** depend from **claims 1** and **17** respectively and even if the characterization of paragraphs 28, 29 and 67 were correct, it is respectfully submitted that the cited paragraphs **do not disclose or suggest** a rule dependent on an originator or recipient as well as at least one value of at least one other parameter, as is now recited in **claims 1** and **17** from which **claims 3** and **19** depend.

For at least the foregoing additional reasons, **claims 3** and **19** are not anticipated by Manto.

**Claim 20** recites: the device of **claim 17** further comprising a sponsorship database for storing said rule.

In an effort to explain the rejection of **claim 20,** the Office Action cites Fig. 3, and paragraphs 29, 67, 93.

**However,** it is respectfully submitted that cited Fig. 3 of Manto depicts a store of network monitoring and management tools, a store of quality of service and service level agreements and a store of cost models.   It is respectfully submitted that Fig.3 **does not disclose** a sponsorship database for storing said rule.

Cited paragraph 29 indicates that smart card, phonecard or virtual phonecard services can be paid by a sponsor in such a way that <u>the numbers that are able to be called can be restricted by the sponsor</u>.   Accordingly, the method of Manto uses both white-listing and blacklisting, and allows a sponsor to manage which parties may be contacted by the sponsored user during a telecommunication session.   It is respectfully submitted that paragraph 29 **does not disclose** a sponsorship <u>database</u> for storing a rule **for charging** a sponsor of said communication services at least a portion of total charges.   Even if the discussion of white-listing and blacklisting is considered to be suggestive of a rule, it is a rule for providing service, **not** a rule for <u>charging</u> for a service granted or provided.   Furthermore, it is respectfully submitted that paragraph 29 does

17

not mention a database of any kind.

Cited paragraph 67 indicates that software checks to see if the calling number is on a list of approved callers for which the sponsor will pay. Again, it is respectfully submitted that even if this discussion is considered to suggest a rule, it is a rule for providing service, **not** a rule for <u>charging</u> for service granted or provided. Furthermore, it is respectfully submitted that paragraph 67 does not mention a database.

Cited paragraph 93 mentions a billing database, a USU account status database and a payment authorization database. The payment authorization database is described as being for recording <u>authorizations</u> by businesses and other organizations. These <u>authorizations</u> may include either generally authorize payment for USU-originated calls to certain number, authorization for certain outgoing calls to the organization or other predetermined numbers, authorization for certain payment codes to be effective to place a call to a USU and other authorizations. It is respectfully submitted that even this discussion of the payment authorization database does not disclose a rule for <u>charging</u> a sponsor of said communication services at least a portion of total charges for the requested communication services. Even if this discussion is considered to suggest a rule, it is a rule for providing service, **not** a rule for <u>charging</u> for service granted or provided.

For at least the foregoing additional reasons, it is respectfully submitted that **claim 20** is not anticipated by Manto.

With regard to **claims 7** and **25**, the Office Action cites paragraphs 89, 161 and claim 5 of Manto.

However, for example, **claim 7** recites: the method according to **claim 1**, wherein **said rule depends on information about the location** of a user of said communication service. As indicated above, "said rule" is a rule <u>for charging a sponsor</u> of said communication services at least a portion of total charges for the requested communication services. While the cited portions of Manto include the word "location", it is respectfully submitted that the cited portions of Manto **do not disclose** that a rule <u>for charging</u> depends on information about the location.

18

Instead, cited paragraph 161 refers to <u>a location **independent** service</u>. Likewise, cited paragraph 89 indicates that it is "possible for users to be authorized on the condition that they call pre-identified numbers <u>from **any** location</u>.

Cited claim 5 of Manto recites, inter alia:  using a calling number to determine, as necessary, the location of the calling party needing services... so that a request for additional services and/or funds can be made...  **However**, it is respectfully submitted that claim 5 **does not disclose** that <u>a rule for charging a sponsor</u> depends on information about the location of a user.

It is respectfully submitted that in making these rejections the Office appears to be disregarding the "as a whole" requirement and distilling the invention down to a "gist", contrary to **MPEP §2141.02(II)**.

For at least the foregoing additional reasons, **claims 7** and **25** are not anticipated by Manto.

**<u>The Claims Are Not Obvious</u>**

**Claims 2, 9, 18** and **24** were rejected under 35 USC §103(a) as allegedly being obvious in view of Manto and Koskinen.

It is respectfully submitted that the Office Action concedes that Manto does not disclose the subject matter of **claims 2, 9, 18** and **24** and relies instead on column 3, line 59 – column 4, line 49 of Koskinen for the recited subject matter.

**However**, while Koskinen mentions sponsorship charging information and shared percentage information it is respectfully submitted that the cited portions of Koskinen **do not disclose or suggest** a <u>rule</u> for charging a sponsor.  Instead, Koskinen indicates that an attribute value <u>pair</u> (AVP) defines the amount of the fee (0 – 100%) that the service provider or terminating part is to pay.  It is respectfully submitted that this <u>attribute value pair</u> is not fairly construed as a <u>rule</u> of the type disclosed and claimed in the present application.

**In any event**, it is respectfully submitted that the attribute value pair of Koskinen is not fairly construed to be <u>a multi-dimensional</u> rule for charging a sponsor of said communication services at least a portion of total charges for the requested communication services <u>based at least on</u> at least <u>one respective value of at least one</u>

19

WSOU_460_8625758-0000835

respective parameter **other than** an identity of an originator of the request for communication services, an intended recipient of a communication of the requested communication services and an identity of the sponsor as is now recited in the claims from which **claims 2, 9, 18** and **24** depend.

For at least the foregoing additional reasons, **claims 2, 9, 18** and **24** are not anticipated and are not obvious, even in view of Manto and Koskinen.

**Claims 4 – 5** and **21 – 22** were rejected under 35 USC §103(a) as allegedly being obvious in view of Manto and Goldberg.

With regard to **claims 4** and **21**, the Office Action cites paragraphs 20 – 21, 37 and 44 – 45 of Goldberg.

**However**, even if Goldberg could be construed as suggesting adding an advertisement to a communication service, it is respectfully submitted that Goldberg does not cure the deficiencies of Manto .

That is, it is respectfully submitted that Goldberg **does not disclose or suggest** accessing or determining a **multi-dimensional rule** of the type recited, for example, in **claims 1** and **17** of the present application.  Instead, it is respectfully submitted that Goldberg appears to suggest a two stage process wherein, first it is determined whether or not a caller participates in the advertisement program.  If the caller participates in the advertisement program, an advertisement is selected and played.  Cited paragraph 25 arguably implies that the selected advertisement identifies a rate premium.  It is respectfully submitted that if this identification of a rate premium is construed to suggest a rule, the suggested rule is one dimensional.  That is, the rate premium of Goldberg appears to be **dependent solely on the selected advertisement**.

**In contrast** the multi-dimensional rule of the present application allows one user to receive a first level or rate of sponsorship for receiving an advertisement and a second user to receive a second level or rate of sponsorship for receiving the same advertisement. **Moreover**, the level of sponsorship received by either or both users can be further adjusted based on the location of the users, the time of day, the day of the week or any other parameter or set of parameters.  That is, the rule for determining sponsor charges of the present application is multi-dimensional.

For at least the foregoing additional reasons, **claims 4** and **21**, as well as **claims**

20

**5** and **22**, which depend respectively therefrom, are not anticipated and are not obvious, even in view of Manto and Goldberg.

Claims **6** and **23** were rejected under 35 USC §103(a) as allegedly being obvious in view of Manto and O'Neill.

In an effort to explain these rejections, the Office Action cites paragraphs 9 and 71 of O'Neill

**However**, paragraph 9 of O'Neil indicates that a first subscriber of guaranteed resources in a communications network can allow the reallocation of the guaranteed resource to another user. Under those conditions, the user who originally paid for the resource guarantee is fully or partially compensated for a resource which what might otherwise go unused. Cited paragraph 71 discusses donated and borrowed resources. The last 12 lines of cited paragraph 71 indicate that borrowing costs assign cost components to a borrowing process and refer to a charge to the borrower and a credit to "the donor".

It is respectfully submitted that this general discussion of reimbursement related to the reallocation of leased resources **does not disclose or suggest** reimbursement of a sponsor that sponsors communication services to a user.

For at least the foregoing additional reasons, **claims 6** and **23** are not anticipated and are not obvious, even in view of Manto and Goldberg.

Additionally, O'Neill is **non-analogous art** with regard to the present application. One of ordinary skill in the art would not have looked to the communication resource reallocation of O'Neill to address problems of implementing a sponsored communication service. It is respectfully submitted that the Office cites O'Neill only in **impermissible hindsight** based on information gleaned only from the present application.

For at least the foregoing additional reasons, **claims 6** and **23** are not anticipated and are not obvious, even in view of Manto and Goldberg.

### Telephone Interview

In the interests of advancing this application to issue the Examiner is invited to telephone the undersigned to discuss the foregoing or any suggestions that the Examiner may have to place the case in condition for allowance.

WSOU_460_8625758-0000837

## CONCLUSION

**Claims 1 – 9, 17 – 23** and **25 – 27** remain in the application. **Claims 1 – 9, 17 – 23** and **25 – 27** have been amended. **Claim 24** has been canceled. **Claim 28** has been added. For at least the forgoing reasons, the application is in condition for allowance. Accordingly, an early indication thereof is respectfully requested.

☒    Remaining Claims, as delineated below:

| (1) FOR | (2) CLAIMS REMAINING AFTER AMENDMENT LESS HIGHEST NUMBER PREVIOUSLY PAID FOR | | (3) NUMBER EXTRA |
|---|---|---|---|
| TOTAL CLAIMS | 20 | - 20 = | 0 |
| INDEPENDENT CLAIMS | 5 | - 5 = | 0 |

☒    This is an authorization under 37 CFR 1.136(a)(3) to treat any concurrent or future reply, requiring a petition for extension of time, as incorporating a petition for the appropriate extension of time.

☒    The Commissioner is hereby authorized to charge any filing or prosecution fees which may be required, under 37 CFR 1.16, 1.17, and 1.21 (but not 1.18), or to credit any overpayment, to Deposit Account Number 06-0308.

In the event the Examiner considers personal contact advantageous to the disposition of this case, he/she is hereby authorized to telephone the undersigned, at 216.363.9000.

Respectfully submitted,

Fay Sharpe LLP

May 21, 2013
Date

Joseph D. Dreher, Reg. No. 37,123
Thomas Tillander, Reg. No. 47,334
The Halle Building, 5th Floor
1228 Euclid Avenue
Cleveland, Ohio 44115-1843
216.363.9000

22

WSOU_460_8625758-0000838